[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14773
Non-Argument Calendar
_____

Agency No. A042-258-080

MARGARET MARIE FORBES,
a.k.a. Margaret Marie Parke,

Petitioner,

versus

US ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 28, 2013)

Before CARNES, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

Margaret Marie Forbes, a Jamaican citizen, petitions for review of the Board

of Immigration Appeals' denial of her motion to reconsider its final order of

removal, which found that she was inadmissible at the time of her entry into the United States for having been convicted of a crime involving moral turpitude.

## I.

Forbes first came to the United States on a visa in 1981. Seven years later, in February 1988, she pleaded nolo contendre in Florida state court to grand theft in the second degree, in violation of Fla. Stat. § 812.014, for which she was sentenced to five years probation and ordered to pay over $10,000 in restitution. At that time, Florida's theft statute prohibited "knowingly obtain[ing] or us[ing], or endeavor[ing] to obtain or to use, the property of another" with the intent to either "temporarily or permanently" deprive that person of a right to the property or to appropriate the property for one's own use. Fla. Stat. Ann. § 812.014(1) (1988). If the stolen property was "[v]alued at $300 or more, but less than $20,000," the offender was guilty of grand theft in the second degree. Id. § 812.014(2)(b). The criminal information underlying Forbes' conviction largely tracked the language of the statute, alleging that she "unlawfully and knowingly obtain[ed] or endeavor[ed] to obtain the property of First Union National Bank, to-wit:  money, of the value of [$300] or more, with intent to permanently or temporarily deprive" the bank "of a right to the property" or "to appropriate the property to her own use."

Forbes returned to Jamaica the following year and applied for permanent resident status at the American Embassy in Kingston. With or without knowledge

2

of her conviction for grand theft, the Embassy granted Forbes' application and she was admitted into the United States in November 1989 as a lawful permanent resident.  In 2005, however, the Department of Homeland Security charged Forbes with removability under 8 U.S.C. § 1227(a)(1)(A) as an alien who was inadmissible at the time of entry or adjustment of status because, among other things, she (1) had been convicted of a crime involving moral turpitude and (2) lacked a valid entry document.

On May 27, 2010, an immigration judge sustained those two charges of removability, finding that Forbes' theft conviction was for a crime involving moral turpitude that made her both inadmissible at the time of her last entry into the United States and, by extension, meant that she lacked a valid entry document because she should never have been granted permanent resident status.  The IJ found that neither § 812.014 nor Forbes' record of conviction conclusively established whether she had been convicted of a crime involving moral turpitude, which under BIA precedent required that she have intended to permanently deprive the bank of its funds.  However, based on the Attorney General's decision in Matter of Silva Trevino, 24 I. & N. Dec. 687 (A.G. 2008), which announced that immigration courts could consider evidence outside the record of conviction in evaluating whether an offense involved moral turpitude, the IJ found that Forbes' police report indicated she intended a permanent taking.

Forbes appealed the IJ's decision to the BIA, contending that the IJ erred in relying on the police report to find that her theft conviction constituted a crime involving moral turpitude and that the legal framework set forth in Silva Trevino was inconsistent with binding precedent. While her appeal was pending, we issued our decision in Fajardo v. U.S. Att'y Gen., 659 F.3d 1303 (11th Cir. 2011), which rejected the framework adopted in Silva Trevino and held that immigration courts could not consider evidence outside the record of conviction in determining whether an alien was convicted of a crime involving moral turpitude.

On April 27, 2012, the BIA dismissed Forbes' appeal. The BIA acknowledged Fajardo's impact on Silva Trevino but nevertheless found that Forbes' theft conviction qualified as a crime involving moral turpitude because the criminal information, a part of her record of conviction, showed that the object of her theft was cash, which under its own precedent raised a presumption of a permanent taking.[1] Forbes did not seek judicial review of the BIA's decision. Instead, she filed a motion for reconsideration on May 29, 2012, arguing that the BIA's determination that she had been convicted of a crime involving moral

---

[1] Crimes involving dishonesty or false statement, including theft offenses of all stripes, are generally deemed by courts to involve moral turpitude. See e.g., Itani v. Ashcroft, 298 F.3d 1213, 1215 (11th Cir. 2002); Chiaramonte v. INS, 626 F.2d 1093, 1097 (2d Cir. 1980); U.S. ex rel. McKenzie v. Savoretti, 200 F.2d 546, 548 & n.7 (5th Cir. 1953). Although courts have not distinguished between theft offenses involving permanent or temporary takings, the BIA has held that "a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended," though it has also held that it is reasonable to presume that the theft of cash involves a permanent taking. Matter of Grazley, 14 I. & N. Dec. 330, 333 (BIA 1973).

turpitude was inconsistent with the holding of <u>Fajardo</u>, which she described as establishing that immigration courts may consider only the nature of the offense, as defined in the relevant statute, and may never look to the underlying facts or circumstances of the offense. Forbes asserted that takings under Fla. Stat. § 812.014 need not be permanent and suggested that the BIA erred in relying on the criminal information to conclude that her conviction involved the theft of cash, thereby allowing it to apply a presumption that the taking was permanent.

The BIA denied Forbes' motion for reconsideration in an order issued on August 17, 2012, concluding that its earlier decision was not inconsistent with <u>Fajardo</u> because it was permitted to rely on her criminal information, which was a part of the record of conviction, to determine that her theft conviction was for a crime involving moral turpitude. The BIA explained that because it was applying a modified categorical analysis, instead of a categorical analysis, <u>Forbes</u> did not preclude it from considering the record of conviction in making that determination. Forbes filed a petition for review of the BIA's decision on September 14, 2012.

## II.

Although Forbes' petition for review and supporting brief indicate that she is only seeking review of the order denying her motion for reconsideration, her claims of error are directed at the underlying merits of the BIA's final removal order. She asserts that the "BIA erred in upholding the [IJ's] Order of Removal,"

5

"erred in determining that her conviction for grand theft constituted a crime of moral turpitude," and applied "an incorrect legal standard in determining that [she] was guilty of a crime of moral turpitude." In particular, she contends that the BIA impermissibly relied on the facts and circumstances of her theft offense—namely, that it involved the taking of cash—and erroneously presumed that her offense involved a permanent taking because Fla. Stat. § 812.014 and the criminal information both refer to permanent as well as temporary takings.

We review the BIA's denial of a motion for reconsideration for an abuse of discretion. Calle v. U.S. Att'y Gen., 504 F.3d 1324, 1328 (11th Cir. 2007). But before examining the merits of Forbes' contentions, we must first consider the extent to which we have jurisdiction to consider her petition for review. See Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1266 (11th Cir. 2004). Section 1252(b)(1) of Title 8 imposes a "mandatory and jurisdictional" 30-day time limit for seeking review of a final order of removal, which is neither subject to equitable tolling nor affected by the later filing of motion for reconsideration. See 8 U.S.C. § 1252(b)(1); Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272 n.3 (11th Cir. 2005) (noting that the 30-day deadline is "mandatory and jurisdictional" and is not suspended or tolled by the filing of a motion to reopen removal proceedings); see also Stone v. INS, 514 U.S. 386, 405, 115 S.Ct. 1537, 1549 (1995) ("[A] deportation order is final, and reviewable when issued. Its finality is

6

not affected by the subsequent filing of a motion to reconsider."). While Forbes' September 14, 2012 petition for review was filed within 30 days of the denial of her motion for reconsideration, it was filed more than four months after the BIA's April 27 removal order. We therefore lack jurisdiction to consider any claims challenging the merits of the final order of removal, including the BIA's finding that Forbes' grand theft conviction constitutes a crime involving moral turpitude.

And though we do have jurisdiction to review whether the BIA abused its discretion in denying Forbes' motion for reconsideration, she has waived any such challenge by failing to adequately address that issue. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (explaining that a party that "elaborates no arguments on the merits" of an issue waives consideration of that issue). As noted earlier, while Forbes generally states that she is seeking review of the denial of her motion for reconsideration, her claims of error are directed at the merits of the BIA's final order of removal, not the relevant issue of whether the BIA abused its discretion in declining to reconsider that order. Cf. Jester v. United States, 714 F.2d 97, 99 n.2 (11th Cir. 1983) (explaining that a motion for reconsideration filed under Federal Rule of Civil Procedure 60(b) "does not bring up the underlying judgment for review" and that appellate review is limited to determining whether the court "abused its discretion in refusing to set aside the original judgment") (quotation marks omitted). Forbes does not discuss whether

7

the BIA erred in rejecting the specific arguments raised in support of her motion for reconsideration or even address the legal standards governing such motions. Instead, the thrust of her arguments is that the BIA erred in ordering her removal to begin with based on a finding that she had committed a crime of moral turpitude. Those arguments, however, go the merits of the underlying removal order, not the merits of the BIA's later determination that Forbes failed to demonstrate that reconsideration of its earlier order was warranted.

Moreover, even if Forbes had adequately challenged the denial of her motion for reconsideration, the BIA did not abuse its discretion in denying that motion. A motion for reconsideration filed with the BIA must "specify the errors of law or fact in the previous order" and must be "supported by pertinent authority." 8 U.S.C. § 1229a(c)(6)(C); see also 8 C.F.R. § 1003.2(b)(2). In her motion for reconsideration, Forbes maintained that the BIA's finding that she had been convicted of a crime involving moral turpitude was inconsistent with the holding of Fajardo. The BIA, however, rightly rejected that argument. In Fajardo we explained that, in determining whether a crime involves moral turpitude, courts have historically applied either a "categorical approach," which looks no further than "the inherent nature of the offense[] as defined in the relevant statute," or a "modified categorical approach," which permits consideration of an alien's record of conviction (i.e., the charging document, plea, verdict, and sentence) where "the

8

statutory definition of a crime encompasses some conduct that categorically would be grounds for removal as well as other conduct that would not." 659 F.3d at 1305 (quotation marks omitted). We then went on to hold that the BIA in that case erred in considering evidence outside the record of conviction because "Congress unambiguously intended adjudicators to use the categorical and modified categorical approach to determine whether a person was convicted of a crime involving moral turpitude." Id. at 1310.

In accordance with Fajardo, the BIA's underlying removal order applied a modified categorical approach and looked no further than Forbes' record of conviction to determine that her theft offense was a crime of moral turpitude because it involved the taking of cash. Contrary to the arguments made by Forbes in her motion for reconsideration, Fajardo does not stand for the proposition that adjudicators may never look beyond the inherent nature of the offense, as defined in the relevant statute, nor did it hold that the BIA may not presume a permanent taking where the record of conviction reveals that a theft offense involved cash. In fact, courts have long held that all theft offenses are presumed to involve moral turpitude. See e.g., Chiaramonte, 626 F.2d at 1097 ("It has been long acknowledged by this Court and every other circuit that has addressed the issue that crimes of theft, however they may be technically translated into domestic penal provisions, are presumed to involve moral turpitude."); Soertarto v. INS, 516

9

F.2d 778, 780 (7th Cir. 1975) ("Theft has always been held to involve moral turpitude, regardless of the sentence imposed or the amount stolen.").  Because the BIA's underlying decision was not inconsistent with the principles announced in Fajardo, it did not abuse its discretion in concluding that Forbes failed to demonstrate that reconsideration was warranted.

For these reasons, we dismiss Forbes' petition for lack of jurisdiction to the extent that she challenges the merits of the BIA's underlying order of removal, and deny that petition insofar as it challenges the denial of her motion for reconsideration.

**PETITION DISMISSED IN PART, DENIED IN PART.**